**Affirmed and Opinion Filed February 20, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01600-CR

No. 05-12-01602-CR

**FREDERICK DEWAYNE HUGHES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos 380-82593-2011 and 380-82564-2011**

## OPINION

Before Justices FitzGerald, Lang, and Lewis
Opinion by Justice FitzGerald

A jury convicted appellant of aggravated robbery and possession of cocaine with intent to deliver. The jury assessed punishment on the aggravated robbery charge at seven years' imprisonment, and the trial court sentenced appellant to ten years' imprisonment, suspended, on the possession charge. In two issues on appeal, appellant argues and the evidence is insufficient to support his conviction for aggravated robbery and he was denied the effective assistance of counsel. Finding no reversible error, we affirm the trial court's judgments.

*Sufficiency of the Evidence*

Appellant contends the evidence is insufficient to support his conviction for aggravated robbery. In particular, appellant asserts there is insufficient evidence to corroborate the accomplice witness testimony.

In response to a Craigslist advertisement placed by Rodney Darden, Mujeeb Rahaman made an arrangement with Darden to purchase 30,000 cell phone memory cards for $22,000. Darden and his colleague Darius Levi planned for Darden to meet Rahaman in a Fry's parking lot where Levi planned to steal the money and pretend to rob them. When Rahaman got nervous, the plan was postponed.

Rahaman and Darden decided to try again the next day. This time, Darden arranged for appellant, Levi, and Derrick Allen to join him. When Rahaman arrived at the parking lot, he parked his car parallel to Darden's. Darden told Rahaman he should come over to Darden's car because Darden was unable to get out of the car. Rahaman went around to the passenger side of Darden's car, opened the passenger door, and leaned in to make the deal. Darden was fidgeting with a backpack, and talking on the phone. Sensing something was happening, Rahaman pulled away from Darden's car, causing the door to fling wide. A black Pontiac Grand Am, later identified as belonging to appellant, suddenly approached and struck the door of Darden's car. Both the door of Darden's car and the left-front fender of appellant's car were damaged as a result.

Rahaman ran back to his car and was attempting to start it when Allen, wearing a bandana over his face, opened Rahaman's driver's-side door. While Allen was grabbing at Rahaman and trying to get his keys, Levi, also wearing a bandana, opened the passenger-side door and leaned into the car, kneeling on the seat next to Rahaman. Allen and Levi shouted at Rahaman, demanding he give them the money. When Rahaman refused, Allen pulled out a gun and pushed it into Rahaman's ribs. At this point, Levi began hitting Rahaman with brass knuckles on the bony area behind his right ear. Rahaman then handed over a plastic grocery bag containing $22,500.00 in cash. Rahaman heard voices shouting "is that it, is that it," and another voice answering, "[Y]eah, that's it, that['s] it, lets go."

Levi and Allen left Rahaman in his car and threw his keys roughly ten to fifteen feet in front of his car, before returning to appellant's car. Throughout the entire attack Darden remained in his car in the Fry's parking lot. As soon as Levi and Allen were back in appellant's car, Darden left the lot, with appellant following behind. The group returned to Darden's apartment and split up the money.

Using the Craiglist advertisement Darden had placed, the police conducted an investigation. They learned that Darden drove a white Crown Victoria and discovered the motel where he was staying. Darden was subsequently arrested. Rahaman reviewed a Fry's security video and identified Darden's car and the other car involved in the incident. Rahaman also identified Darden in a line-up. During his interview with the police, Darden identified the other people involved in the robbery by their street names, including appellant, who was identified by his street name "Fred Dog." A contact number for Fred Dog was stored in Darden's cell phone. Fred Dog's number was run through a database, and it was identified as belonging to appellant.

The day after Darden was arrested, he was in the back of a police car in an attempt to assist the police with verification of the residences of the other suspects, when he received a text from appellant asking if there was anything he needed. Darden was instructed to text back, "two eight balls."[1] Arrangements were then made to meet appellant at a local restaurant. Darden was returned to jail.[2]

The police were aware that appellant drove a black Pontiac Grand Am, and once appellant's car was identified, he was stopped for a traffic violation nine days after the robbery. Cocaine was recovered from appellant's companion, Cumby Jones. Appellant was arrested for a traffic violation and for driving without a license. During his post-arrest interview, appellant

---

[1] Testimony reflects that an eight ball is 3.5 grams of cocaine.

[2] Darden did not testify at trial and his police interview is not part of the record.

admitted he was attempting to deliver cocaine to Darden. As a result, appellant was charged with possession with intent to deliver.[3]

Appellant's post-arrest interview was recorded and a portion of the interview was played for the jury. During the interview, appellant admitted that he knew Darden, but denied any knowledge of or involvement in the robbery. Appellant also provided two different explanations for the damage to his vehicle. He initially insisted that someone else must have caused the damage. Later, he claimed the damage occurred in his garage.

Appellant's car was seized at the time of arrest, and the damage to his car was compared to the damage to Darden's car. Specifically, the comparison was made to determine if appellant's car was the cause of damage to the door of Darden's vehicle. At trial, State's exhibits 11 and 12 showed the damage to both cars. Kevin Sasso, a police officer with specialized training in accident investigation, testified about the investigation he performed to determine whether it had been appellant's vehicle that made contact with Darden's vehicle. Spasso concluded there was a ninety-nine per cent certainty that it was appellant's car that collided with Darden's during the robbery. Spasso explained that he took measurements from the ground up to various identifying points within the damaged area of the two cars. The measurements were identical, and Spasso testified that they would not have matched if a different car had struck Darden's. In addition, Darden's vehicle was missing white paint on the door edge that was transferred to the Grand Am.

Levi was also arrested, pleaded guilty to aggravated robbery, and agreed to testify as part of his plea bargain. He identified appellant as a participant in the robbery and provided the same account of events as Rahaman. Levi described appellant's car as a black Pontiac and explained

---

[3] Because appellant does not challenge the sufficiency of the evidence to support his conviction for possession, we do not detail the testimony and evidence pertinent to this charge.

how the car crashed into the door of Darden's vehicle. Levi testified that after he grabbed the money from Rahaman, he and the other accomplices, including appellant, got into appellant's car and drove away.

Rahaman testified that he had purchased memory cards from Darden in the past. For the transaction in question, Darden contacted Rahaman and told him he had some more memory cards to sell. The two agreed on a price of $22,500 for about 30,000 memory cards. Rahaman identified Darden, but he could not identify anyone else involved in the robbery.

The jury convicted appellant of aggravated robbery and possession of cocaine with intent to distribute.

A conviction may not be founded solely on accomplice testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). An accomplice is a person who participates before, during, or after the commission of an offense, with the requisite culpable mental state. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A challenge to the sufficiency of the evidence to corroborate the testimony of an accomplice is a challenge to the sufficiency of the evidence to support the jury's verdict on guilt or innocence. *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App.1993). In reviewing the sufficiency of the corroborating evidence, we exclude the accomplice testimony from our consideration and determine whether there is any independent evidence that tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). We view the corroborating evidence in the light most favorable to the jury's verdict. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). If there are two views of the evidence, one tending to connect the accused to the offense and the other not, we defer to the jury's view. *Smith*, 332 S.W.3d at 442. "[I]t is not appropriate for appellate courts to independently construe the non-accomplice evidence." *Id.*

It is not necessary that corroborating evidence directly connect a defendant to an offense or be sufficient by itself to establish guilt. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial. *Smith*, 332 S.W.3d at 442. The evidence must simply link the accused in some way to the commission of the offense and show that rational jurors could conclude that the evidence sufficiently tended to connect the accused to the offense. *Simmons v. State*, 282 S.W .3d 504, 508 (Tex. Crim. App. 2009).

Appellant was charged with aggravated robbery. The elements of aggravated robbery are: (1) a person; (2) in the course of committing theft; (3) with intent to obtain or maintain control of property; (4) intentionally or knowingly; (5) threatens another with, or places another in fear of; (6) imminent bodily injury or death; and (7) uses or exhibits; (8) a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02–.03 (West 2011). "In the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(1) (West 2011). In conducting an analysis under article 38.14, appellant's level of participation as a principal or a party is irrelevant. See *Quevedo v. State*, No. 05-11-00086-CR, 2012 WL 3055470, at *2 (Tex. App.—Dallas, July 27, 2012, pet. ref'd) (not designated for publication).[4]

Eliminating the accomplice testimony from consideration, the remaining evidence is sufficient to tend to connect appellant to the aggravated robbery. *See Malone*, 253 S.W.3d at 257. Nine days after the robbery, appellant was stopped while driving his damaged car. The evidence at trial established there was a ninety-nine percent certainty that appellant's vehicle was one of the two vehicles involved in the crime. The damage to the vehicle was also consistent with the victim's testimony and the security video.

---

[4] In the aggravated robbery case, the jury was instructed on the law of the parties. *See* TEX. PENAL CODE ANN. § 7.02 (West 2005).

Appellant offered conflicting explanations for the damage to his vehicle. These conflicting stories may be combined with other evidence to provide corroboration. *See Smith*, 332 S.W.3d at 442; *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (stating guilty demeanor and inconsistent statements are "circumstances of guilt"). Although appellant denied any involvement in the robbery, he admitted to an association with Darden and made contact with him shortly after the robbery. The jury viewed a portion of appellant's videotaped interview with the police, and was in the best position to assess the credibility of appellant's version of events. Therefore, viewing the evidence in a light most favorable to the verdict, we conclude the evidence is sufficient to tend to connect appellant to the offense. Appellant's issue is overruled.

### Ineffective assistance of counsel

Appellant also claims his trial counsel was ineffective. Specifically, appellant contends counsel's pre-trial preparation and representation was inadequate because counsel failed to obtain orders on a number of pretrial motions and did not adequately prepare for trial. Appellant complains about counsel's trial performance because counsel did not make an opening statement, was allegedly ineffective in his objections and cross-examination, and did not call any witnesses.

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective-assistance claim must be "firmly

founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id*. (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 814. To overcome the presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Here, the record is silent as to the reasons for trial counsel's actions. Because appellant did not file a motion for new trial, there is no record reflecting counsel's rationale for the challenged conduct. We decline appellant's invitation to speculate about such conduct. When record evidence is not available, we presume counsel's conduct was reasonable. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Moreover, appellant offers only general critique of counsel's performance. There is no detail as to how counsel allegedly failed to investigate or prepare a proper defense, nor is there any detail concerning witnesses that might have been called to testify. Therefore, we are unable to determine whether or how any of the alleged deficiencies may have prejudiced appellant's defense. *See Perez v. State,* 310 S.W.3d 890, 896 (Tex. Crim. App. 2010) (requiring comparison of State's evidence with evidence jury did not hear due to counsel's failure to investigate); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("Counsel's failure to call witnesses . . . is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony"). Similarly, appellant has not shown the testimony that allegedly required an objection, or had an objection been made, that the trial court would have abused its discretion in overruling the objection. *See Alexander v. State*, 282 S.W.3d 710, 705, 710 (Tex. App.—Houston [1st Dist.] pet ref'd). And there has been no showing that counsel's cross-examination lacked a sound trial strategy. *See Ex parte McFarland*, 165 S.W.3d 743, 756 (Tex. Crim. App. 2005). Under these circumstances, on this record, we are unable to conclude that counsel's performance was constitutionally deficient. Appellant's issue is overruled.

The trial court's judgments are affirmed.


Do Not Publish
Tex. R. App. P. 47
121600F.U05

        /Kerry P. FitzGerald/
        KERRY P. FITZGERALD
        JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FREDERICK DEWAYNE HUGHES,
Appellant

No. 05-12-01600-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-82593-2011.
Opinion delivered by Justice FitzGerald.
Justices Lang and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered February 20, 2014


/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FREDERICK DEWAYNE HUGHES, Appellant

No. 05-12-01602-CR V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-82564-2011.
Opinion delivered by Justice FitzGerald.
Justices Lang and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 20, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE